You may please the court. I am Bill Mattingly. I represent the coal mine operator in this federal black lung claim. Judge Davis, two days shy of a year ago I was before you and argued the Mingo Logan Coal Company case which will obviously play a great impact in this case. I was unsuccessful in that case in convincing you and the panel that substantial evidence contradicted what the administrative law judge did. I think there's two things I need to talk about this morning. First, does substantial evidence support the ALJ's findings? And then second, did the agency get the law right? When you look at the ALJ's decision I'd like for you to focus on page 44 of the joint appendix because there's where the ALJ lays out the reasoning that he found the opinions of doctors Wren and Balot were not persuasive. And he says the opinions of doctors Wren and Balot failed to rebut the presumption claim it suffers from excluding coal dust as a cause of the obstructive lung disease are not persuasive. He explains why he makes that finding in the next sentence. He says they focus primarily on findings of reversibility during pulmonary function testing. That's a partial correct finding. When you look at the testimony of these two pulmonary specialists, they went through each of the different pulmonary function studies, the breathing test, and you give a drug to the person who's doing the test to see if you have an immediate change in the amount of air you can blow out. Some of the tests showed that change. Some of the tests didn't show that change. That wasn't the key to their analysis. The key to their analysis was over a period of several years you saw significant changes over a liter of air in this man's ability to blow his air in and out. And that convinced them this wasn't a permanent or a static disease such as to see with coal dust exposure, but it was a reversible type of disease that responded at times to treatment and sometimes it did not. To support that, if you look at the Joint Appendix at page 341, Dr. Balad explains why coal workers pneumoconiosis doesn't show this type of pattern. And he explains one of the hallmarks of asthma is reversibility diagnosed during the time of the pulmonary function testing. And here, if you compare the pulmonary function testings from one institution time to another, there's a marked variation in the testing. That's exactly what we saw here. Dr. Wren and his deposition at page 404 and 405 goes through each of the studies and then concludes that overall this gentleman had ventilatory function, had improvement in ventilatory function with bronchodilator. And when you look at the studies in chronologic order, the waxing and waning of the ventilatory function was what allowed him to say this wasn't due to coal mine dust exposure. The administrative law judge simply got it wrong. He factored that out of his analysis. Why else does substantial evidence not support what the administrative law judge did? He has to look at the entire record. And he said these physicians primarily said that's the reason that I find that this isn't a coal mine dust-induced lung disease. That's not correct. When you look at their supplemental reports that are in the joint appendix at page 434 and then to the end, they both explain multitude of reasons. They look at the lung volume studies. They look at the diffusion studies. They look at a CT scan of the chest. And perhaps most importantly in this case, they look at lung pathology. There was a biopsy done and although it showed coal dust was in the lungs, it didn't show any reaction of the lung to coal dust, hence there was no coal mine dust-induced lung disease. So the administrative law judge's description on page 44 of the joint appendix is not supported by substantial evidence. This case has to go back. The director concedes that the administrative law judge got the standard wrong in looking at the evidence because he made the employer rule out the existence of pneumoconiosis. The administrative law judge used the wrong standard when he looked at the evidence. There's nothing in the statute that requires rule out of the existence of pneumoconiosis, be it legal or clinical pneumoconiosis. What we would go back to is the Supreme Court's decision in Director v. Greenwich Collieries. And there they say, under the APA and specifically in the Black Lung Act, you look at a preponderance of the evidence. The party with the burden of proof has to show that by preponderance of the evidence. Here, because of the employer must show pneumoconiosis is not present by a preponderance of the evidence. You don't need to go in and have a special additional rule out standard. The director agrees. That's another reason to send this case back for the administrative law judge to look at. The other reason is the agency simply got the law wrong. Here, the new regulations have been promulgated. That's a difference from the last time I argued this same issue before you, Judge Davis. But the regulations still get the law wrong. The regulations say there's two ways to rebut the presumption. And although the statute specifically says the secretary is limited to these two fashions, either showing pneumoconiosis doesn't exist or showing disabilities not due to pneumoconiosis, as Judge Niemeyer explained in the concurrence in the Mingo-Logan case, there's a third option. It may not be big, but you can show pneumoconiosis, albeit present, didn't cause the disability. It may be mild, but it didn't cause the disability. That has no precedential value here. It has no binding precedential value. I think it's an apt and right on point analysis. It's not binding on us. No, it is not. Has any federal judge other than Judge Niemeyer taken that position? To date, no. The Sixth Circuit, as the director has supplied the record, so I they mentioned Ussery in their opinion, never got to this discussion. The Tenth Circuit mentioned Ussery in the argument and essentially noted in a footnote they weren't going to address the issue. So I'm back here in the Fourth Circuit begging you to address the issue. Any other coal mine circuits out there? Third. So you haven't been to the third yet? Haven't been to the third yet, haven't been to the seventh yet, but it seems like I'm getting around. Why did the agency is ignoring that third potential way of rebutting presumption? And it sounds like in theory it may happen. Well, even if he's wrong, and he probably is, when he discredited your doctors, what evidence would they be left to prove an alternative? There wouldn't be if the discrediting is valid. And because the discrediting is not based on substantial evidence, it's not a valid decision. So it has to go back to be considered correctly. The agency here has forgotten that there is the option for the employer to show pneumoconiosis is not a substantially contributing cause. The Sixth Circuit suggested that while the claimant can show pneumoconiosis as a substantially contributing cause, the flip side of the coin is the employer has to rule out the contributing cause. That's not the flip side of the coin. The flip side of the coin is that the pneumoconiosis is not a substantially contributing cause to the impairment. An example probably is the best way to explain this. Minor files a claim, everyone agrees he has pneumoconiosis, everyone agrees he has mild pulmonary impairment from the pneumoconiosis. He has multiple claims, they're each denied. Before his last claim, he has a car wreck. He has a crush injury to his chest. Now he has a disabling pulmonary disease because he has orthopedic problems that prevent him from taking in a deep breath. Pneumoconiosis hasn't caused that disability. The car wreck did. Under the director's analysis, that man would get black lung benefits. Under the analysis we're suggesting is correct, the man does not get black lung benefits because pneumoconiosis did not play a substantially contributing role in the disability. The director tries to distinguish away USRI, which they admitted last year, would bind them by saying the definition of pneumoconiosis has changed. That's a red herring. It's a red herring for two reasons. 921c4 is the interpretation or is that part of the statute the Supreme Court interpreted in USRI. That part of the statute has not changed in the substance of the language we're looking at here. The date it applies changed, but the language of the secretary must or can rebut by showing the absence of pneumoconiosis or pneumoconiosis has not changed. The secretary is putting out the definition of pneumoconiosis changed in 1978, but in the cases we attached to the reply brief, it's clear that the practice before the agency included what is now referred to as legal pneumoconiosis, a broad definition of pneumoconiosis which has always been defined as a chronic dust disease of the lungs arising out of you could prove emphysema or obstructive lung disease might be due to cold dust exposure. People will try to do it the easy way by showing x-ray changes of pneumoconiosis. The practice has changed, not the definition. And the director's interpretation has another problem with the statute because when you look at the statute as a whole, 923b says you can't deny a claim solely based on a negative chest x-ray. Well if you read that in concert with the definition of pneumoconiosis, the director is suggesting to us that the definition of pneumoconiosis would not correspond with that statement. That statement, you can't deny a claim just because of negative x-ray, certainly stands for the proposition that pneumoconiosis includes things that are other than negative x-ray diseases that arise out of coal mine employment. So the distinction the director is trying to make between clinical and legal pneumoconiosis simply does not fly. But in your rebuttal, in your attempt to rebut the existence of pneumoconiosis, if you fail as the finding was against you, that means automatically that you have the COPD that's related to coal dust exposure, correct? No. It does not. It does not define. Go ahead. Legal pneumoconiosis can be COPD, but that that last step is the COPD has to be causing the disabling pulmonary disease. When the presumptions invoked, the minor has disabling lung disease, it could be that the minor has COPD that doesn't cause impairment, but has significant congestive heart failure that typically causes... First of all, you have to rebut two things, right? That there's no pneumoconiosis, or that there is, there's no total disability related to coal dust exposure, right? That's correct. All right, so if you lose in rebutting the presumption that there's no pneumoconiosis, doesn't that automatically mean that there's coal dust exposure the basis for the pneumoconiosis? Not necessarily. It's not necessarily the basis for the disability. I didn't say that. It is the basis for the pneumoconiosis if you rebut that. But your doctor said he didn't even have it. That's correct. So then after losing that, what faith do you give that to those who have faith, but again, substantial evidence doesn't support the ALJ's decision in this case, because the reason he said they didn't diagnose pneumoconiosis was because they said there wasn't reversibility on all the studies. See, the problem with doctors can't do what lawyers do. You know, lawyers, we're allowed to argue in the alternative and say things. Well, I'm arguing hard on A, but it's not A in theory B. But doctors are scientists, and they put their eggs in the Okay, well then, if I was wrong on that, then it's not, well, I can't put much faith in it, because you've got the first part wrong, which was the science. Now you're trying to convince me now that it's not substantially related to coal dust exposure. You see, don't you think that that's one of the problems that you have, Mr. Mattingly? I can help you with that problem, because here the administrative law judge got it wrong the first time. The reason he said the doctors were wrong on pneumoconiosis isn't supported by substantial evidence. Thank you so much. Mr. Long? Yes, good morning, and may it please the Court, my name is Heath Long. I represent the respondent, Ardis Gump. As Attorney Mattingly stated, he has a two-part argument. I'm arguing the first part in rebuttal, which would be the and talk directly about that medical evidence. Attorney Mattingly referred to page 44 of the joint appendix and cited a very small section and said that's why the judge discredited his doctors, Drs. Wren and Drs. Belot. And he did read one paragraph that was completely accurate. The opinions of Wren and Belot fail to rebut the presumption that claimant suffers from legal pneumoconiosis because their reasons for excluding coal dust as a cause of claimant's obstructive lung disease are not persuasive. He further explains how he arrives at that position. One of the ways he gets to that position is that Attorney Mattingly mentioned that when someone takes a pulmonary function study, you get results, they give you a bronchodilator, you get new results. If there's a percentage change, it can be considered that you have a disease that can be reversed. What happened in this case is that the last test that Mr. Gump took, and this was over a period of years, so he deteriorated from 2007 into 2009 while he was being tested. In 2009, the last test showed reversibility but a fixed component. When you reverse, you don't reverse a hundred percent. You might reverse ten percent, five percent, fifteen percent. Mr. Gump had a disabling obstructive defect that did not reverse at all. It was what what they call fixed. And that is what Dr. Wren ignored. I don't mean he didn't he didn't explain it away. He just never addressed it. He pretended like that part didn't exist. He just said, if there's reversibility, can't be coal dust. But that's not so. Mr. Gump, like almost all minors, I think all minors chew, but most minors smoked as well as had coal dust in their lungs. Mr. Gump was underground for 34 years. That's how the the presumption was invoked. 34 years and all five doctors who examined him found a disabling lung disease, obstructive lung disease. At this time when it's when they give you the bronchodilator and you have some reversibility, if you have two potential causes for your lung disease, smoking here and coal dust exposure, some may reverse because you might have some damage. You might have some emphysema. You might have some damage from smoking and you might have a larger percentage of your damage from coworkers pneumoconiosis or coal dust exposure. That fixed part is coworkers pneumoconiosis. That's damage caused by coal dust exposure. That's what the other physician said. Dr. Wren, as I said, never addressed it. Just ignored that fixed part. So if you want to know why his opinion was discredited by the Administrative Law Judge, that was the reason. Now Dr. Balot, on the other hand, this was not two Mr. Gump had asthma and he had smoking damage. Dr. Balot had examined Mr. Gump four times over the period of almost two decades. Two of those times he agreed that Mr. Gump did in fact have coworkers pneumoconiosis and then changed his opinion the last time he saw him. Just to show you how closely the Administrative Law Judge Burke examined the record, in his decision and order he pulls out cross-examination of Dr. Balot that goes to the very heart of what Dr. Balot believes. And on page 44 of the joint appendix, Dr. Balot, in response to a question that I personally had asked, said had Dr. Oesterling, who had looked at the biopsy, said yes there are coal macules, there is coworkers pneumoconiosis here. I see evidence of focal emphysema. I would say yeah this gentleman deserves compensation for that condition. But we have Dr. Oesterling telling us on the pathology that there is no coal miners working pneumoconiosis. Judge Burke makes the decision that Dr. Balot is confusing clinical and legal pneumoconiosis. Clinical pneumoconiosis, you need those spots. You need the x-ray or you need the X-rays. Legal, you do not. And his opinion was discredited, not for the reasons Attorney Mattingly said, but because he mistook clinical and legal pneumoconiosis and could not differentiate between the two of them. Sorry. May it please the court, my name is Sean Bukowski and I represent the I'd like to start by clarifying a couple issues. The petitioner in its brief, and Mr. Mattingly also mentioned this a bit during his argument, talks a lot about the rebuttal limiting sentence in section 921C that says how the secretary can rebut the presumption. There's no dispute that that sentence does not apply to private employers. In a private employer case like this, you could just erase that sentence from the statute. It's just not there. Nevertheless, there are only... Congress normally doesn't like us to do those kind of things. Well, I mean, because it only applies to the secretary. In a case where the government is the liable party, then the sentence, you know, still applies. Now, nevertheless, there are only two ways to rebut the presumption. That doesn't come from the sentence. It comes from simple logic. You know, to bring a successful black lung claim, the key elements are, the minor has to show, one, that he or she has a disease caused by coal dust exposure, and that disease has to cause a total disability. Now, to invoke the presumption, the claimant's already proven total disability. So the only ways that are logically available to rebut are to show either, A, that the minor doesn't really have pneumoconiosis, or B, that even if the minor has pneumoconiosis, the pneumoconiosis doesn't cause the disability. That sort of leads to the next obvious question, which is what an operator or the government needs to establish rebuttal on either one of those grounds. Now, that doesn't come from, the answer to that doesn't come from logic, and it doesn't come from the text of the statute. The statute doesn't address that. It's a gap in the statute, and it's primarily a policy question, and the answer is found in the regulations. And the Department of Labor's regulations say you can rebut the presumption either by showing that the minor doesn't have pneumoconiosis, and if you do that, you just have to show the inverse of what a claimant needs to show. You have to show that the claimant doesn't have a disease substantially related to or aggravated by cold dust exposure. But if you can't do that, if we're talking about a minor who not only has 15 years of employment and a totally disabling lung condition and has pneumoconiosis, and all you can do is show that pneumoconiosis doesn't cause a disability, we impose, the regulations impose a pretty demanding standard. They require the employer to show that pneumoconiosis doesn't cause any part of the disability. That's the rule-out standard. Now, the petitioner attacks the rule-out standard regulation, but it really only has one argument against it, and that argument is that the rule-out standard regulation is contrary to the Supreme Court's decision in Ussery. But that's just not true. Nowhere in Ussery does the Supreme Court say that employers can rebut the 15-year presumption by showing that there's no substantial connection between pneumoconiosis and disability. What the Supreme Court held in Ussery was that employers can rebut the presumption by showing that a minor's disability is wholly caused by a disease other than pneumoconiosis. That's not inconsistent with the rule-out standard. That is the rule-out standard. Ussery also said that the rebuttal limiting sentence in section 921c4 imposed a special limit on the government's ability to rebut the presumption at the time. At the time Ussery was decided, only clinical pneumoconiosis was generally compensable. Now, Mr. Mattingly, in his opening presentation, spent a lot of time trying to disprove that, and they attached a benefits review board decision predating the 1978 amendment that, in his view, shows that legal pneumoconiosis was compensable and points out in his brief that it was the actual practice of the Social Security Administration or the Department of Health and Human Services, who administered many claims under the program back in the 70s, to award legal pneumo claims. But the important point is that the Supreme Court disagreed with that in Ussery. The very part of Ussery that the petitioner relies on is entirely premised on the notion that emphysema, for example, caused by coal dust employment is not compensable under the Black Lung Benefits Act. And that the Supreme Court obviously is the highest authority on this. In what language in Ussery do you rely on for that specific proposition? The Supreme Court explains that the effect of the rebuttal limiting sentence is to grant benefits if the minor is disabled by a pulmonary impairment arising in connection with his employment as a minor and has a case of pneumoconiosis. And to skip down, the Supreme Court says disability due to these diseases, by which they mean diseases, pulmonary impairments arising in connection with coal mine employment that aren't pneumoconiosis. Those diseases are not otherwise compensable under the Act. So essentially what this rebuttal limiting sentence in section 921c4 did was it imposed this extra restriction on the Secretary of Labor and Secretary of HHS in trying to rebut claims where the government was the liable party. Essentially if a minor, the government could no longer rebut the presumption by showing that the minor didn't have clinical pneumoconiosis but did have what we would now call legal pneumoconiosis. This was a limitation that was imposed on the government that wasn't imposed on operators. But it's a limitation that became irrelevant two years later when the definition of pneumoconiosis was expanded to include all diseases that are caused by coal dust exposure and mining employment. So Congress just hasn't gotten around to fixing the statute? I think there's no real incentive for Congress to fix the statute. I mean there's the sentence now that's kind of an appendix that once had this limited the government in a way that didn't limit operators. But now basically the expansion of the definition of pneumoconiosis has applied that same Congress reenacted the 921c4 presumption in 2010 supports the regulation because the Department of Labor enacted the rule of standard in 1980 and 718.305d and has consistently helped that since then. So Congress's decision to reenact the statute using identical language is an endorsement by Congress of the agency's interpretation of the act. Unless you have any further questions your honor I encourage you to affirm the Department of Labor's revised regulation interpreting section 921c4. I guess we have a Marbury versus Madison moment. Never thought I'd have a chance to say that about a black lung claim but we have a true separation of powers moment. Did the Supreme Court mean what it said in Usry when it said employers aren't limited to the same things the Secretary is or did the Supreme Court not? I don't know what passage Mr. Bukowski was pointing to but on page 34 and 35 the court notes that the operator contends the presumption would be an irrebuttable presumption because it would establish liability even though it might be medically demonstrable in an individual case that pneumoconiosis was mild and did not cause the disability and it was wholly the product of another disease such as emphysema or tuberculosis. Usry is as I have stated in the brief and again this morning it contradicts what the Secretary's done and and he was honest he told you he wants to erase the Secretary from the statute. And it was wholly, that's conjunctive isn't it? He said mild and it was wholly the cause. Didn't it say wholly? He did but he wants to erase the word secretary from the statute and the Supreme Court has said in Usry you can't do that. If you erase the word secretary it changes the whole meaning. There has to be an extra meaning to that statute. But the Supreme Court didn't say that in It did. And so here we are. We didn't petition for cert in Mingo Logan. I thought you did. I don't think we did. I have filed a few petitions for cert recently and I may be confusing but I don't think that that one went up. Mr. Long explained why the ALJ could have credited Dr. Wren's opinion. Those weren't the reasons he gave. We can't supply reasons for the ALJ why he might have supported a doctor or discredited a doctor's opinion. The other physician was Dr. Balot. The administrative law judge misinterprets legal pneumoconiosis himself because there is a prohibition in the act that you cannot deny a claim based only on a negative chest x-ray. That prohibition is on the agency factfinder. There's no prohibition about a doctor considering a negative x-ray in concert with all the other medical evidence in reaching a diagnosis. And here Dr. Balot explained, had the CT scan or the pathology been positive for pneumoconiosis, I would have diagnosed the disease. So he used a combination of the negative x-ray, the negative CT scan, the negative pathology results, and all the clinical testing to conclude there's not a chronic lung disease arising out of coal mine employment. At very least this case has to go back for the administrative law judge to actually consider all the relevant evidence and based on substantial evidence contained in the record as a whole. I asked the court to also go ahead and address the other issue and that is what standards should be used. Thank you. Thank you very much. We will ask the clerk to adjourn the court for today and then we'll come down and greet counsel.
judges: Henry F. Floyd, Andre M. Davis, Max O. Cogburn